OLIVIA SCARSE, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—93—3825

Opinion filed June 5, 1995.

Thomas G. Siracusa, of Power, Rogers & Smith, P.C., of Chicago, for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Meera Werth, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

JUSTICE WOLFSON delivered the opinion of the court:

Plaintiff Olivia Scarse asks us to expand the definition of "intended and permitted use" of city streets to apply to people who are discharged from taxis into the street at the middle of the block. We decline the invitation.

FACTS

Alexander's Restaurant is located mid-block on Huron Street, between Wells and Franklin Streets, in Chicago. The restaurant was plaintiff's destination on January 20, 1989.

At about 10:30 that night, the taxi carrying the plaintiff stopped outside Alexander's. The restaurant is located on the south side of Huron, a one-way street going west. The street had been excavated down to the gravel level on the north side of the street, producing a difference in height of about three to four inches.

There were cars parked along the curb on both sides of Huron

Street. The taxi double-parked in front of Alexander's in the traffic lane. The plaintiff got out on the passenger side into the traffic lane. She fell over the edge of the street excavation and was injured.

There was no crosswalk or other street marking in the area where the plaintiff was injured. Nor were there any barricades or signs warning of the street construction. She sued the City of Chicago and Commonwealth Edison.

The trial court granted summary judgment for the defendants, ruling that the city did not owe the plaintiff a duty of care since she was not an intended and permitted user of the street.

We affirm the trial court's decision.

DECISION

The Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1—101 through 10—101 (West 1992)) defines the scope of a municipality's duty to maintain its property. The issue in this case is whether section 3—102(a) creates a duty of care owed to the plaintiff. That section provides:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3—102(a) (West 1992).

The threshold question in a negligence case is whether the defendant owed a duty of care to the plaintiff. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162, 456 N.E.2d 116.) Whether that duty exists is a question of law subject to *de novo* review on appeal. *Wolowinski v. City of Chicago* (1992), 238 Ill. App. 3d 639, 641, 606 N.E.2d 273.

Illinois courts have developed the general principle that a municipality owes no duty of care to a pedestrian who walks in or crosses a public roadway outside a crosswalk. (*Curatola v. Village of Niles* (1993), 154 Ill. 2d 201, 208, 608 N.E.2d 882.) The rationale for these decisions is a restatement of the obvious: the streets are for the use of vehicles, not pedestrians, except under certain limited circumstances. *Curatola*, 154 Ill. 2d at 210; *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098.

The "limited circumstances" that establish a duty of care have been nibbling away at the general rule of nonliability.

A person exiting from a legally parked car is an intended and permitted user of the space around his car. In *Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293, 525 N.E.2d 242, the plaintiff was injured when he fell into a hole in the street. The hole was lo-

cated a few feet from his car. The court held the city must have recognized that the plaintiff would have to use a part of the street to go to and from his car.

In *Curatola*, the plaintiff was unloading his truck, which was parked legally. As he moved away from the truck he stepped into a pothole about seven feet from the curb. The court held he was an intended and permitted user of the street around his lawfully parked vehicle. The court said it was recognizing a "narrow exception" to the general rule. *Curatola*, 154 Ill. 2d at 213.

Another exception to the general rule is found in *Evans v. City of Chicago* (1994), 268 Ill. App. 3d 924, 645 N.E.2d 242. In *Evans* the plaintiff entered the street to see if his bus was coming. He fell into an uncovered utility hole located 15 inches outside an unmarked crosswalk. Finding the existence of a duty, the court held it would be unreasonable and unfair to trace imaginary crosswalk lines to confine the pedestrian.

In the case before us, plaintiff relies on a provision of the City of Chicago Municipal Code to demonstrate she was an intended and permitted user of the roadway. Chapter 27, section 276(d), states:

> "The driver of any taxicab shall not stop, stand, or park such vehicle upon any business street, or in any block of any other street where a taxicab is already parked, at any place other than in a taxicab stand, *except for the expeditious loading or unloading of passengers* \*\*\*." (Emphasis added.) Chicago Municipal Code § 276(d) (1983).

Since the ordinance does not require taxis to discharge passengers at a curb, says the plaintiff, the city must have intended that drivers use their discretion about where to discharge passengers. That then makes the plaintiff an intended and permitted user of that part of the street where the taxi stops.

We do not agree. Exceptions to well-established rules of law should have discernible boundaries. When deciding whether to impose a duty, courts consider the foreseeability of the injury, the likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden upon the defendant. *Mitchell v. City of Chicago* (1991), 221 Ill. App. 3d 1017, 1020, 583 N.E.2d 60.

If the plaintiff's position were accepted, the cabdriver would define the city's duty each time he discharges a passenger. The boundaries would depend on where the driver decides to stop. The exception would swallow the rule.

The supreme court addressed this question in *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 425-26, 592 N.E.2d 1098. Holding

that the city did not owe a duty to a pedestrian hit by a car while crossing a highway at mid-block, the court said:

> "Were we to measure the duty of care by the intent of individuals traveling over these various properties, we would effectively negate section 3—102(a) of the Tort Immunity Act, for no longer would the intended use by the municipality be controlling. Instead, the intent of any particular individual would determine whether the municipality owed a duty of care."

In *Curatola* (154 Ill. 2d at 211), the supreme court instructs us to "look no further than the property itself which the plaintiff was using when injured to determine its intended use." We have done that. The traffic lanes of Huron Street, in the middle of the block, could not have been intended for pedestrian use.

Plaintiff urges us to say that the existence of a duty depends on the way in which the pedestrian is injured. Under that theory, a duty would exist where the pedestrian falls into a hole in the street, but not where the pedestrian is struck by a car. That distinction has been rejected by our supreme court in *Vaughn v. City of West Frankfort* (1995), 166 Ill. 2d 155. In *Vaughn*, the court once again said that the existence of a city's duty to a pedestrian "depends on whether the municipality intended that the plaintiff-pedestrian walk in that part of the street where the injury occurred *and* permitted the plaintiff-pedestrian to do so." (Emphasis added.) 166 Ill. 2d at 163.

In *Vaughn*, as in this case, the city owed no duty to maintain streets in a reasonably safe condition for pedestrians who choose to cross the street outside the protection of the crosswalks. A cabdriver, at the end of his trip, cannot create a municipal duty of care where none exists.

CONCLUSION

We agree with the trial court's determination that the City of Chicago did not owe a duty of care to Olivia Scarse when she got out of her taxi and walked on Huron Street. We therefore affirm the order granting summary judgment against the plaintiff.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.