BEVERLY THOMAS, Plaintiff-Appellee, v. THE TOWN OF CICERO, Defendant-Appellant.

First District (3rd Division)  No. 1—99—1120

Opinion filed September 29, 1999.

Dennis E. Both, of Edward R. Vrdolyak, Ltd., of Chicago, for appellant.

Marilyn I. Kosin, of Robert S. Kosin, Ltd., of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

Streets are for vehicles. Sidewalks and crosswalks are for pedestrians. But what about alleys? The plaintiff in this case walked in a Town of Cicero (Cicero) alley. She stepped into a crack and fell, injuring herself.

The question before us is whether Cicero intended that the plaintiff walk in the part of the alley where she fell. If it did not, the money damages judgment entered against Cicero cannot stand.

After examining where the plaintiff walked and why she walked there, we conclude she was not an intended user. For that reason, we vacate the jury's verdict in her favor and remand the cause to the trial court with directions to enter a judgment for the defendant notwithstanding the verdict.

FACTS

For her fifty-eighth birthday on September 9, 1997, Beverly Thomas (Beverly) planned to have lunch with her son. Driving by her next-door neighbor Bernice's garage sale on the way to lunch, Beverly, a self-confessed "garage sale fanatic," spied a canister vacuum cleaner. Beverly needed a vacuum cleaner, but hesitated to purchase this one from Bernice when she saw the $50 price. Her son offered to buy the vacuum cleaner for Beverly as a birthday present, and Beverly accepted.

When Beverly and her son returned from lunch, Beverly wanted to try her present "right away," but found the vacuum cleaner had "very poor suction." Beverly wanted her son to return it to Bernice, but her son was embarrassed and took the vacuum cleaner back to Bernice without an explanation. Beverly agreed to explain the vacuum cleaner's problems to Bernice later that afternoon.

After her son left, Beverly went through her backyard to put a bag of trash in her alley garbage can. Beverly then planned to use a shortcut down the alley, rather than the sidewalk in front of her house and around the corner, to get to Bernice's garage. After depositing her trash, Beverly turned, stepped toward the middle of the alley, walked a few feet down the alley, tripped, and fell on a crack near the middle of the alley, breaking every finger in her right hand.

Four months later, Beverly sued Cicero for negligently failing to maintain the alley.

At trial, Beverly testified September 9 was sunny, clear, and dry. Beverly said when she fell, she was looking straight ahead, contemplating her explanation to Bernice about the vacuum cleaner's return. Beverly had lived in her Cicero home since 1972, raising her seven children there. Beverly had noticed the crack in the alley for "a number of years," but never alerted Cicero, preferring to keep her complaints to herself and avoiding the crack as she walked down the alley.

Beverly's husband, Frank Thomas (Frank), testified he noticed the crack in August 1985 and reported it to Cicero officials. Frank acknowledged pedestrians regularly used the alley for "shortcuts and things."

Sam Jelic (Jelic), Cicero's commissioner of public works, testified Cicero's alleys are "easements for people to get in their garages, utilities, electric, cable, garbage." Cicero does not maintain its alleys for pedestrians. Jelic said Cicero has alley inspectors who tour the town's alleys every two or three weeks, looking for cracks in need of repair. After examining photos of the crack where Beverly fell, Jelic agreed "it possibly needs to be patched."

The jury answered two special interrogatories. First, the jury found Beverly was "an intended and permitted user of the alley." Second, the jury found Cicero had "actual or constructive notice" of the crack where Beverly fell. The jury returned a verdict of $78,642, but decided Beverly was 45% negligent and awarded only $35,389. On March 10, 1999, the court entered judgment on this verdict, and on March 25, 1999, the court denied Cicero's motion to vacate and motion for judgment notwithstanding the verdict. This appeal followed.

DECISION

■ Initially, we note Cicero's discussion of our standard of review is limited to this cursory, unsupported statement in its opening brief: "The motions to dismiss and for directed finding should have been granted as there was no genuine issue as to any material fact and the Town was entitled to judgment as a matter of law." Cicero's brief violates the clear mandate of Supreme Court Rule 341(e)(3): "The appellant must include a concise statement of the applicable standard of review for each issue, with citation to authority, either in the discussion of the issue in the argument or under a separate heading placed before the discussion in the argument." 177 Ill. 2d R. 341(e)(3). Despite this omission, we choose to reach the merits of Cicero's appeal. See *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 527, 691 N.E.2d 191 (1997).

■ Cicero's appeal raises three issues that do not warrant prolonged discussion: the crack was a *de minimis*, nonactionable defect; the crack was an open and obvious defect; and Cicero had no actual or constructive notice of the crack. The record contains enough evidence to submit these issues for the jury's consideration. See *Warner v. City of Chicago*, 72 Ill. 2d 100, 104-05, 378 N.E.2d 502 (1978). The jury decided these fact issues in favor of Beverly, and we cannot say these findings were against the manifest weight of the evidence.

■ Cicero's central contention before trial, during trial, and on appeal is that it owed no duty to Beverly because Beverly was not an intended and permitted user of the alley. The issue of whether a duty exists is a question of law for the court (*Marshall v. City of Centralia*, 143 Ill. 2d 1, 6, 570 N.E.2d 315 (1991)), and our review is *de novo*.

■ Section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act provides:

"[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used,

and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3—102(a) (West 1996).

■ Under section 3—102(a), the municipality's duty depends on whether the plaintiff was a permitted *and* intended user of the defective public property on which she was injured. *Scarse v. City of Chicago*, 272 Ill. App. 3d 903, 906, 651 N.E.2d 690 (1995). "[A]n intended user of property is, by definition, also a permitted user; a permitted user of property, however, is not necessarily an intended user." *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524, 702 N.E.2d 535 (1998).

■ Ordinarily, a municipality owes no duty of care to a pedestrian who walks in or crosses a public roadway outside a crosswalk. *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208, 608 N.E.2d 882 (1993). But a municipality does owe a duty to reasonably maintain its crosswalks for pedestrians. *Ramirez v. City of Chicago*, 212 Ill. App. 3d 751, 753, 571 N.E.2d 822 (1991).

In recent years we twice addressed the question of whether a pedestrian walking in an alley is an intended and permitted user of public property. The "permitted" part is fairly easy and does not require extended discussion. Cicero does not seriously contend Beverly lacked permission to walk in the alley near the rear of her home. But it does insist it intended the part of the alley she used would be for vehicles, not people. We agree with the town.

In *Khalil v. City of Chicago*, 283 Ill. App. 3d 161, 669 N.E.2d 1189 (1996), the plaintiff, while walking down an alley to a nearby restaurant, tripped on a hole in the middle of the alley. The plaintiff sued the city, and the trial court granted summary judgment to the city.

■ On appeal, we noted "a plaintiff must be not only a legally permitted user of the public property, but also an intended user." *Khalil*, 283 Ill. App. 3d at 163. We said: "[A]n alley is a roadway designed for vehicular traffic, and the duty imposed upon a municipality under section 3—102(a) is the same as that imposed for a street." *Khalil*, 283 Ill. App. 3d at 163-64, citing *J. Burton Co. v. City of Chicago*, 236 Ill. 383, 388, 86 N.E. 93 (1908). That is, alleys, like streets, are intended for use by vehicles, not pedestrians. *Khalil*, 283 Ill. App. 3d at 164. And because pedestrians are not intended users of alleys, we held the city owed no duty to the plaintiff to maintain its alleys in a reasonably safe condition. *Khalil*, 283 Ill. App. 3d at 164.

■ We find *Khalil* controls this case. Like the plaintiff in *Khalil*, Beverly was walking down the middle of an alley to a nearby destina-

tion when she was injured. And like the plaintiff in *Khalil*, Beverly was not an intended user of the alley. She was using the alley as if it were a sidewalk. But it was not. Cicero conceded Beverly had an easement for using the alley to put trash into her garbage can. But Beverly had thrown away her garbage and had stepped away from the protection of her easement when she tripped and fell.

In the other recent alley case we examined where the pedestrian was walking and why she was walking there. In *Kavales v. City of Berwyn*, 305 Ill. App. 3d 536, 712 N.E.2d 842 (1999), the plaintiff, while crossing an alley from one sidewalk to another, tripped on uneven pavement in the alley. The plaintiff sued the city. The trial court granted summary judgment to the city.

On appeal, we reversed the summary judgment. We found that while the plaintiff "may not have been in a 'crosswalk' as that word is defined by statute, neither was she in an 'alley.' " *Kavales*, 305 Ill. App. 3d at 544. Rather, we said, she was in the "sidewalk area." *Kavales*, 305 Ill. App. 3d at 544. In short, pedestrians are intended users of the area where a sidewalk intersects an alley. *Kavales*, 305 Ill. App. 3d at 544. That meant the city owed the plaintiff a duty to maintain its property in a reasonably safe condition. *Kavales*, 305 Ill. App. 3d at 544.

It took no great leap of logic for us to conclude in *Kavales* that a city intends people to walk on the part of the alley that connects one sidewalk section with another. But, here, the record contains no evidence Beverly was using her alley as a crosswalk between sidewalks. She had left the safe harbor that marked the path to her garbage can. She was using the alley as a shortcut to Bernice's garage, as a substitute for sidewalks that are intended for pedestrians. This case is *Khalil*, not *Kavales*.

Additionally, the jury's answer to the first special interrogatory has no effect on our conclusion. The "intended and permitted" determination informs the duty issue, and the duty issue is a question of law. See *Khalil*, 283 Ill. App. 3d at 162-63 (duty is a question of law, and a municipality's duty to maintain its property is limited by section 3—102).

CONCLUSION

Because Cicero owed no duty to Beverly, the trial court erred in denying the defendant's postjudgment motion to vacate and motion for judgment notwithstanding the verdict. We reverse the order entering judgment in the plaintiff's favor, and we remand this cause to the

trial court with directions to enter a judgment for the defendant notwithstanding the verdict.

Reversed and remanded with directions.

CERDA and BURKE, JJ., concur.