# Illinois Official Reports

## Supreme Court

---

### *Monson v. City of Danville*, 2018 IL 122486

---

| | |
|---|---|
| Caption in Supreme Court: | BARBARA MONSON, Appellant, v. THE CITY OF DANVILLE, Appellee. |
| Docket No. | 122486 |
| Filed<br>Rehearing denied | August 2, 2018<br>September 24, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Vermilion County, the Hon. Nancy S. Fahey, Judge, presiding. |
| Judgment | Reversed.<br>Cause remanded with directions. |
| Counsel on Appeal | Miranda L. Soucie, of Spiros Law, P.C., of Danville, for appellant.<br><br>Jennifer L. Turiello, of Peterson, Johnson & Murray-Chicago, LLC, and Scott D. McKenna and Scott B. Dolezal, of Best, Vanderlaan & Harrington, both of Chicago, for appellee.<br><br>Stephen Blecha, of Coplan & Crane, Ltd., of Oak Park, for *amicus curiae* Illinois Trial Lawyers Association. |

Daniel G. Hasenstab, of Brown & James, P.C., of Belleville, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Gregory C. Ray, of Craig & Craig, LLC, of Mattoon, for *amicus curiae* Township Officials of Illinois Risk Management Association.

Justices              JUSTICE BURKE delivered the judgment of the court, with opinion.
                      Chief Justice Karmeier and Justices Garman and Neville concurred in the judgment and opinion.
                      Justice Thomas specially concurred, with opinion, joined by Justices Kilbride and Theis.
                      Justices Thomas, Kilbride, and Theis dissented upon denial of rehearing, without opinion.

**OPINION**

¶ 1      At issue in this appeal is whether sections 2-109 and 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-109, 2-201 (West 2012)), apply to a city's failure to repair a sidewalk defect. The plaintiff in this case filed suit against the City of Danville (City) to recover for her injuries from tripping and falling on an uneven seam in a sidewalk. The City moved for summary judgment under sections 2-109 and 2-201 of the Act on the grounds that its employees exercised discretion in determining which portions of the sidewalk were in need of repair or replacement. The circuit court of Vermilion County granted the motion and entered summary judgment for the City. The appellate court affirmed. 2017 IL App (4th) 160593. For the reasons that follow, we reverse the lower courts' judgments and remand the cause to the circuit court for further proceedings.

¶ 2                                  BACKGROUND
¶ 3      On the afternoon of December 7, 2012, plaintiff, Barbara Monson, was shopping in the downtown business district of Danville, Illinois. She parked her car on the street near the intersection of North and Vermilion Streets and walked to a nearby pawn shop. According to plaintiff's deposition testimony, it had rained earlier in the day, causing approximately one inch of water to pool on low areas of the sidewalk. After visiting the pawn shop, plaintiff began walking back to her car. Plaintiff testified she felt her foot hit a piece of concrete, which caused her to trip and fall forward onto the sidewalk. She sustained multiple injuries as a result of her fall.

¶ 4      The record contains the deposition testimony of Shelly Larson, the superintendent of downtown services at the time of the incident, and Doug Ahrens, the director of the public works department. They testified that a project to inspect and repair sidewalks in the downtown area was begun in the fall of 2011 and completed in March 2012. Larson did an

initial walk-through and identified areas of concern by marking them with highlighter paint. Ahrens conducted his own walk-through and, after conferring with Larson and other City employees, made the final decisions about which sections of sidewalk would be repaired, replaced, or removed altogether.

¶ 5    Ahrens testified he made the determinations on a case-by-case basis, considering the condition of the concrete; the height of the variations between slabs of sidewalk; the normal path of travel for pedestrians; the intended use of the area; proximity to buildings, light poles, and trees; and the available time and cost. There was no written policy addressing these factors, nor was there a policy that any deviation of a certain size, *i.e.*, more than two inches, necessitated replacement. Ahrens testified he could not recall inspecting or measuring the particular slabs of concrete where plaintiff fell, nor did he recall making a decision not to repair those specific slabs. He stated, however, that the area would have fallen within the parameters of the project. When asked whether he considered that section of the sidewalk for potential repair, Ahrens stated, "I believe we did consider the slab of concrete because we looked at every slab of concrete."

¶ 6    Ahrens also signed an affidavit averring, to the best of his knowledge and memory, that the portions of the sidewalk where plaintiff fell "were either not prioritized to be in need of replacement at that time or such replacement could not fit with the allowable time and budget for that project ***. Therefore, in or around the Fall of 2011, I used my discretion as Public Works Director not to replace that portion of the sidewalk."

¶ 7    Plaintiff filed a complaint against the City alleging negligence and willful and wanton conduct. The complaint alleged the City breached its duty to maintain its premises in a reasonably safe condition by (i) failing to provide a safe means of ingress and egress on the sidewalk by allowing a portion thereof to become sunken, broken, worn, uneven, and/or unsafe; (ii) allowing an unreasonably dangerous condition to exist; (iii) allowing the sidewalk to remain in a dangerous condition despite having actual and/or constructive knowledge of the dangerous condition; (iv) failing to correct or repair the sidewalk; (v) permitting a portion of the sidewalk to become and remain in a dangerous condition, thereby presenting a hazard to those persons it reasonably anticipated would use the sidewalk; (vi) failing to adequately warn pedestrians of the dangerous condition; and (vii) failing to maintain its property in a reasonably safe condition. As a result of the City's acts or omissions, plaintiff alleged she sustained serious and permanent injuries to her face, mouth, foot, shoulder, and arm.

¶ 8    The City filed a motion requesting summary judgment on the ground that it was immune from liability pursuant to sections 2-109 and 2-201 of the Act (745 ILCS 10/2-109, 2-201 (West 2012)). The City also argued plaintiff's claim was not actionable because the alleged sidewalk defect was *de minimis* and the condition was open and obvious. The trial court granted the motion and entered summary judgment in favor of the City solely based on tort immunity. The court did not consider the City's alternative arguments.

¶ 9    On appeal, plaintiff argued section 3-102(a) of the Act (*id.* § 3-102(a)), which codifies a municipality's duty at common law to maintain its property in a reasonably safe condition, supersedes the discretionary immunity under section 2-201 of the Act. The appellate court rejected that argument and affirmed the trial court's entry of summary judgment. 2017 IL App (4th) 160593, ¶ 35. The court held section 3-102(a) does not supersede the immunity in section

2-201. *Id.* ¶ 30. The court further held the City adequately established its immunity from liability pursuant to sections 2-109 and 2-201 of the Act. *Id.* ¶¶ 30, 33.

¶ 10    This court allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). We allowed *amicus curiae* briefs to be filed by the Illinois Trial Lawyers Association, in support of plaintiff, and by the Illinois Association of Defense Trial Counsel and the Township Officials of Illinois Risk Management Association, in support of the City. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 11                                    ANALYSIS

¶ 12    On appeal of an order granting summary judgment, a reviewing court must determine whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). The purpose of summary judgment is not to try an issue of fact but to determine whether one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adames v. Sheahan*, 233 Ill. 2d 276, 296 (2009). Although summary judgment is encouraged in order to aid the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation. *Adams*, 211 Ill. 2d at 43. Consequently, a court must construe the evidence in the record strictly against the movant and should grant summary judgment only if the movant's right to a judgment is clear and free from doubt. *Id.* On appeal from an order granting summary judgment, a reviewing court must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether summary judgment is proper as a matter of law. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). We review the trial court's summary judgment ruling *de novo*. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 385 (1996).

¶ 13                              I. Tort Immunity Act

¶ 14    At issue is whether the City is entitled to immunity from liability pursuant to sections 2-109 and 2-201 of the Act. Determining whether the City is immune involves interpreting the language of the Act. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503 (2000). This is a question of law, which this court reviews *de novo*. See *id.*; *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008); *Barnett*, 171 Ill. 2d at 385. Our primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008). The most reliable indicator of that intent is the statutory language, given its plain and ordinary meaning. *Id.* We view the statute as a whole, bearing in mind the subject it addresses and the apparent intent of the legislature in enacting it. *People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 17. Words and phrases should not be viewed in isolation but, rather, must be considered in light of other relevant provisions in the statute. *In re E.B.*, 231 Ill. 2d 459, 466 (2008).

¶ 15    In 1965, the General Assembly enacted the Act in response to this court's abolition of sovereign immunity. *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11 (1959); *Barnett*, 171 Ill. 2d at 386; see also Ill. Const. 1970, art. XIII, § 4 (recognizing the

- 4 -

abolition of sovereign immunity, "[e]xcept as the General Assembly may provide by law"). The Act protects local public entities and their employees from liability arising from government operations. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003); 745 ILCS 10/1-101.1(a) (West 2012). The purpose of the Act is to prevent the dissipation of public funds on damage awards in tort cases. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 229 (2007) (citing *Van Meter*, 207 Ill. 2d at 368). Unless a specific immunity provision in the Act applies, a public entity is liable in tort to the same extent as a private party. *Id.* Since the Act is in derogation of the common law, it must be construed strictly against the public entity seeking immunity. *Snyder v. Curran Township*, 167 Ill. 2d 466, 477 (1995); *Aikens v. Morris*, 145 Ill. 2d 273, 277-78 (1991).

¶ 16    The trial court granted summary judgment to the City on the grounds that it was entitled to immunity under sections 2-109 and 2-201 of the Act. Read together, these sections immunize a public entity from liability for the discretionary acts or omissions of its employees. See *Smith*, 231 Ill. 2d at 118 (citing *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 484 (2002), and *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 496 (2001)).

¶ 17    Section 2-109 of the Act states:

> "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2012).

¶ 18    Section 2-201 of the Act states:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.* § 2-201.

The conditional language in section 2-201, "[e]xcept as otherwise provided by Statute," indicates that the legislature did not intend for the immunity in this provision to be absolute and applicable in all circumstances. See *Murray*, 224 Ill. 2d at 232. Thus, discretionary immunity under section 2-201 "is contingent upon whether other provisions, either within the Act or some other statute, create[ ] exceptions to or limitations on that immunity." *Id.*

¶ 19    Plaintiff first argues that the City cannot claim discretionary immunity under sections 2-109 and 2-201 of the Act because section 3-102(a) supersedes these provisions. Section 3-102(a) states:

> "(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2012).

¶ 20    Plaintiff characterizes section 3-102(a) as an immunity provision similar to other immunity provisions in the Act. She argues that section 3-102(a) "directly governs a local public entity's immunity relating to a dangerous condition of its property." In support, plaintiff points to the rule of statutory construction that holds that, " '[w]here there are two statutory provisions, one

of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail.' " *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195 (1992) (quoting *Bowes v. City of Chicago*, 3 Ill. 2d 175, 205 (1954)). Relying on this rule, plaintiff contends that the City cannot claim discretionary immunity under the Act because the specific "immunities" in section 3-102(a) prevail over the general immunities in sections 2-109 and 2-201 and the City has failed to show it is entitled to immunity under section 3-102(a). We reject this argument.

¶ 21 The fatal flaw in plaintiff's reasoning is that section 3-102(a) does not grant any immunities. Section 3-102(a) contains two main clauses. The first clause states that a local public entity has a "duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3-102(a) (West 2012). The second clause states that a local public entity "shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." *Id.*

¶ 22 Plaintiff acknowledges that the first clause simply sets forth a general duty on the part of a local public entity to maintain its property in a reasonably safe condition under certain circumstances. She argues, however, that the second clause in the statute operates as an immunity provision. According to plaintiff, section 3-102(a) immunizes local public entities from liability for the failure to maintain their property if either of two conditions exist: (1) the public entity lacks sufficient notice of the dangerous condition, or (2) the public entity lacks sufficient time to correct the dangerous condition.

¶ 23 Plaintiff's reading of the second clause in section 3-102(a) is erroneous. The statute clearly refers to the *plaintiff's* burden to prove the defendant had actual or constructive notice of the dangerous condition of the property within a reasonable amount of time to remedy or protect against the condition. See *id.* ("a local public entity *** shall not be liable for injury *unless it is proven* that it has actual or constructive notice of the existence of such a condition *** in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition*" (emphasis added)). It is the plaintiff's burden to allege and prove all of the elements of a negligence claim, including a duty owed by the defendant, a breach of that duty, and that the breach was the proximate cause of the plaintiff's injuries. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 256 (1999). Under section 3-102(a), actual or constructive notice of a dangerous condition is an element of a negligence claim. See *Lansing v. County of McLean*, 69 Ill. 2d 562, 572-73 (1978) (actual or constructive notice requirement in section 3-102 of the Act is a necessary predicate of a duty on the part of the defendant public entity); *Glass v. City of Chicago*, 323 Ill. App. 3d 158, 162-64 (2001) (the plaintiff has the burden to prove actual or constructive notice under section 3-102(a)). By contrast, the immunities in the Act are affirmative defenses, which the defendant has the burden to plead and prove. *Van Meter*, 207 Ill. 2d at 370. Consequently, if the purpose of section 3-102(a) were to grant immunity to a local public entity, as plaintiff argues, the statute would refer to the burden of proof imposed on the *defendant*, not the plaintiff.

¶ 24    For this reason, no court has held that section 3-102(a) grants immunity to municipalities. Rather, the courts of this state have uniformly held that section 3-102(a) merely codifies the common-law duty of a local public entity to maintain its property in a reasonably safe condition. See *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 15; *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377-78 (1995); *Wagner v. City of Chicago*, 166 Ill. 2d 144, 150 (1995); *West v. Kirkham*, 147 Ill. 2d 1, 14 (1992); *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 412-15 (1991); *Curtis v. County of Cook*, 98 Ill. 2d 158, 163 (1983); *Goodknight v. Piraino*, 197 Ill. App. 3d 319, 327 (1990); *Swett v. Village of Algonquin*, 169 Ill. App. 3d 78, 92 (1988); *Horrell v. City of Chicago*, 145 Ill. App. 3d 428, 435 (1986); *Warchol v. City of Chicago*, 75 Ill. App. 3d 289, 294 (1979); David C. Baum, *Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act*, 1966 U. Ill. L.F. 981, 1012. As this court has stated:

> "[T]he language in section 3-102(a) is clear: the city has a duty to maintain its property in a reasonably safe condition so that persons using ordinary care are not harmed. ***
>
> * * *
>
> *** [T]he purpose of section 3-102(a) is *not to grant defenses and immunities*. Instead, it merely codifies, for the benefit of intended and permitted users, the common law duty of a local public body to properly maintain its roads. *Immunities and defenses are provided in other sections*. [Citation.]" (Emphases added.) *Wagner*, 166 Ill. 2d at 151-52.

¶ 25    Accordingly, we conclude that the statutory language does not support plaintiff's characterization of section 3-102(a) as an immunity provision. Because section 3-102(a) does not confer immunity, it cannot override or supersede the immunities set forth in sections 2-109 and 2-201. These sections simply do not conflict with each other. Therefore, the principle that a specific immunity provision prevails over a general immunity provision is inapplicable. See *Kennell v. Clayton Township*, 239 Ill. App. 3d 634, 639-40 (1992).

¶ 26    Plaintiff next argues that the City cannot claim discretionary immunity under sections 2-109 and 2-201 because these sections are located in article II of the Act. She points to the first phrase in section 3-102(a), which states, "[e]xcept as otherwise provided in this Article, a local public entity has the duty" to exercise ordinary care to maintain its property. 745 ILCS 10/3-102(a) (West 2012). Plaintiff interprets this phrase to mean that the only immunities available to a public entity for claims involving the maintenance of property are those in article III of the Act. Because sections 2-109 and 2-201 are not found in article III, plaintiff contends they are inapplicable here. Once again, plaintiff's argument misconstrues the statutory language.

¶ 27    The plain language in section 3-102(a) states that a local public entity has certain duties, except as otherwise provided in article III. The statute says nothing about immunities. In *West*, 147 Ill. 2d at 14, this court considered the language in section 3-102(a) and concluded that the phrase "[e]xcept as otherwise provided in this Article" limits the scope of a municipality's *duty* as set forth in that section. At issue in *West* was whether a municipality's duty to maintain its property included the duty to install a left turn arrow at an intersection. We held: "It is 'otherwise provided' in section 3-104, which is located in article III with section 3-102(a), that a municipality does *not* have a duty to *provide* traffic control devices." (Emphases in original.) *Id.* Thus, this court interpreted the conditional language in section 3-102(a) to be a limitation

- 7 -

on the scope of the general duty to maintain property. *Id.* We did not find the language limited the scope of immunities available to a defendant. Plaintiff's argument is at odds with precedent and simply not supported by the language in the Act.

¶ 28 Under the plain language of the Act, a negligence claim based on a municipality's violation of the duty to maintain its property can be subject to discretionary immunity under section 2-201, depending on the facts in the case. We now address whether the immunity provisions apply here.

¶ 29 Whether an act or omission is classified as discretionary within the meaning of section 2-201 escapes precise formulation and should be made on a case-by-case basis in light of the particular facts and circumstances. *Snyder*, 167 Ill. 2d at 474 (citing *Johnston v. City of Chicago*, 258 Ill. 494, 497 (1913), and *Johnston v. City of East Moline*, 405 Ill. 460, 466 (1950)). Immunity under section 2-201 is absolute, covering both negligent and willful and wanton conduct. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 195-96 (1997). A defendant claiming immunity under this section must prove its employee held either a position involving the determination of policy or a position involving the exercise of discretion. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998). In addition, the defendant must establish that the act or omission giving rise to the injuries was both a determination of policy and an exercise of discretion. *Id.*

¶ 30 Policy determinations are defined as " 'those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Id.* at 342 (quoting *West*, 147 Ill. 2d at 11). Discretionary decisions are "unique to a particular public office" (*Snyder*, 167 Ill. 2d at 474) and "involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed" (*Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 394-95 (2000)). In contrast to discretionary and policy decisions, a public entity's ministerial acts are not immune from liability under the Act. See *Chicago Flood Litigation*, 176 Ill. 2d at 193-94. Consequently, the negligent performance of ministerial acts can subject a municipality to tort liability. *Snyder*, 167 Ill. 2d at 473. Ministerial acts are "those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Id.* at 474 (citing *Larson v. Darnell*, 113 Ill. App. 3d 975 (1983)).

¶ 31 Plaintiff contends that the trial court's grant of summary judgment in favor of the City must be reversed because there is a genuine issue of material fact as to whether the acts or omissions alleged in her complaint are classified as discretionary or ministerial. We reject this argument. Whether an act is discretionary within the meaning of the Act is a question of law to be decided by a court, not a question of fact for a jury. See, *e.g.*, *Van Meter*, 207 Ill. 2d at 380 (holding, as a matter of law, that defendants did not meet their burden to establish their discretionary immunity defense);[1] *Harrison v. Hardin County Community Unit School District No. 1*, 197

---

[1]In *Van Meter*, this court reversed the lower courts' dismissal of the plaintiffs' complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 1994)) because the defendants failed to present sufficient evidence to support their claim of discretionary immunity. *Van Meter*, 207 Ill. 2d at 380. Although we said there were "[q]uestions of material fact" as to whether the defendants' actions were discretionary within the meaning of the Act, we did not identify any disputed issues of fact. *Id.* We simply concluded that the facts necessary to sustain defendants'

Ill. 2d 466, 474 (2001) (holding, as a matter of law, that the school district was entitled to discretionary immunity); *Harinek*, 181 Ill. 2d at 341-43 (holding, as a matter of law, that the city was entitled to discretionary immunity); *Chicago Flood Litigation*, 176 Ill. 2d at 196-97 (holding, as a matter of law, that the city's actions were discretionary); *Snyder*, 167 Ill. 2d at 474-77 (holding, as a matter of law, that the alleged acts or omissions were properly characterized as ministerial, not discretionary). On the tort immunity issue, plaintiff does not dispute any facts set forth in the pleadings, depositions, and affidavits, nor does she present any additional evidence to contradict the facts of record. Thus, there are no genuine issues of material fact, and the only issue is whether the City is entitled to immunity as a matter of law under the Act.

¶ 32    In her complaint, plaintiff alleged the City breached its duty to maintain its premises in a reasonably safe condition by, among other things, allowing a portion of its sidewalk to become sunken, broken, or uneven; failing to correct or repair the sidewalk; and failing to warn pedestrians of the dangerous condition of the sidewalk. The City contends these alleged acts or omissions were discretionary in nature because the decisions to repair certain portions of the sidewalk and leave other portions alone were a matter of public policy within its employees' discretion. We disagree.

¶ 33    This court has recognized that, depending on the facts, decisions involving repairs to public property can be a discretionary matter subject to immunity under section 2-201. *Chicago Flood Litigation*, 176 Ill. 2d at 195 (citing *Kennell*, 239 Ill. App. 3d at 641, citing *Lusietto v. Kingan*, 107 Ill. App. 2d 239, 244 (1969)). However, " '[d]iscretion' connotes a conscious decision." *Corning v. East Oakland Township*, 283 Ill. App. 3d 765, 768 (1996). Accordingly, a public entity claiming immunity for an alleged failure to repair a defective condition must present sufficient evidence that it made a conscious decision not to perform the repair. The failure to do so is fatal to the claim. See, *e.g.*, *Gutstein v. City of Evanston*, 402 Ill. App. 3d 610, 626 (2010) (city not entitled to discretionary immunity where no evidence showed any repair work was done in an alley, let alone how it was done); *Corning*, 283 Ill. App. 3d at 768-69 (city's failure to replace a missing stop sign was not an exercise of discretion under section 2-201 because there was no evidence the city was aware of it or made the decision to remove it).

¶ 34    In this case, the City has not met its burden of establishing that the alleged acts or omissions constituted an exercise of discretion and a determination of policy by its employees within the meaning of section 2-201. The record shows the City began a project to repair its downtown-area sidewalks in the fall of 2011 and completed it in the spring of 2012. Larson and Ahrens testified they conducted separate walk-throughs of the area and marked or noted the portions of sidewalk they felt were in need of repair. Ahrens made the final determinations as to which concrete slabs would be repaired, replaced, or removed. Ahrens testified that no City policy dictated these decisions. Rather, he relied on a number of factors, including the cost and time allowed for the project, the condition of the concrete, nearby obstructions, and the path of travel for pedestrians. It is uncontested that the sidewalk slabs upon which plaintiff

---

immunity defense were not apparent on the face of the complaint, nor were they supported by affidavit or other evidentiary materials of record. *Id.* Thus, defendants were not entitled to a dismissal as a matter of law. *Id.* Accordingly, the case does not stand for the proposition that whether an act is discretionary or ministerial is a factual question to be decided by the trier of fact.

alleges she tripped and fell were not worked on during the course of the 2011-12 project. Ahrens stated he did not remember inspecting the portion of the sidewalk where plaintiff fell. He testified that section would have been included in his overall inspection, however. Ahrens averred in his affidavit that, to the best of his knowledge and memory, the portions of sidewalk involved in plaintiff's accident "were either not prioritized to be in need of replacement at that time or such replacement could not fit with the allowable time and budget for that project." In his deposition, Ahrens admitted he did not recall any conversations or decisions regarding the specific slabs at issue. Ahrens also testified he had no e-mails or documents in his possession related to those slabs.

¶ 35 The City has not presented any evidence documenting the decision not to repair the particular section of sidewalk at issue in this case. We do not believe the legislature intended to apply discretionary immunity under these circumstances. Under the City's rationale, nearly every failure to maintain public property could be described as an exercise of discretion. In order to obtain absolute immunity, a city would only have to allege (i) it had a general policy or program to inspect its property for dangerous conditions, (ii) the defect at issue was included in the program, (iii) the defect at issue was not repaired, and (iv) thus, the city exercised discretion in deciding not to repair the defect. This reasoning expands the definition of discretionary immunity so broadly as to eliminate a city's duty to maintain its property. See *id.* (rejecting township's argument that its failure to maintain or inspect its property was an act of discretion as an " 'impermissibly expansive definition of discretionary immunity' " (quoting *Snyder*, 167 Ill. 2d at 472)).

¶ 36 The facts in this case stand in marked contrast to another case involving a sidewalk defect. In *Richter v. College of Du Page*, 2013 IL App (2d) 130095, ¶¶ 1, 4, a student filed a negligence action against the College of Du Page (College) after tripping and falling on an uneven sidewalk. The College moved for summary judgment based on immunity under sections 2-109 and 2-201 of the Act. The trial court granted the motion, and the appellate court affirmed the entry of summary judgment. *Id.* ¶¶ 24, 50. The record showed Chris Kornsey, the manager of the buildings-and-grounds department, had unfettered discretion as to the handling of each sidewalk deviation, including the one at issue. *Id.* ¶ 41. The College's policy for handling such deviations involved three levels: "first, placing orange cones to alert individuals to the deviation; second, applying yellow paint; and third, physically altering the sidewalk, if necessary." *Id.* Kornsey's own policy "was to use a wait-and-see approach to determine the level of correction required, if any." *Id.* He testified that he "made a 'per-case' decision or judgment call depending on the height, timing, and location of the deviation." *Id.* ¶ 44.

¶ 37 Sometime prior to the date of the plaintiff's accident, Kornsey was notified of the defect because someone else had tripped on the same uneven sidewalk. *Id.* ¶¶ 20, 41. Kornsey placed orange cones and applied yellow paint at the site. The cones and paint were present at the time the plaintiff tripped and fell on the sidewalk. *Id.* ¶¶ 41, 44-45. After that incident, Kornsey waited until after the final thaw of the year to physically repair the sidewalk. *Id.* ¶ 21. He stated that patch work was done and the entire area was " 'planed down.' " *Id.* The court held Kornsey's handling of the sidewalk deviation constituted an exercise of discretion and a determination of policy within the meaning of section 2-201. *Id.* ¶ 50. The College thus was absolutely immune from liability pursuant to sections 2-109 and 2-201 of the Act. *Id.*

¶ 38    In contrast to the record before the *Richter* court, the record in this case contains no evidence of the City's decision-making process with respect to the specific site of plaintiff's accident. While the City presented evidence that the site was included in an overall evaluation of its sidewalks, there are no facts regarding the City's assessment of the actual site. We do not know which factors were taken into account by the City in deciding not to repair the sidewalk. More importantly, we do not know whether anyone even took note of a sidewalk deviation at that location, or whether it was simply overlooked. The record before us thus does not contain sufficient evidence to establish that the City's handling of the sidewalk defect constituted an exercise of discretion.

¶ 39    Construing the Act strictly against the City, we conclude it has not met its burden to prove it is entitled to discretionary immunity under sections 2-109 and 2-201 of the Act as a matter of law. We hold, therefore, that the City is not entitled to summary judgment based on its claim of discretionary immunity.

## II. *De Minimis* Defect

¶ 41    The City asks this court to affirm the trial court's order granting summary judgment on the alternative basis that the allegedly defective seam in the sidewalk was *de minimis*. Although the lower courts did not rule on this issue, we may affirm the judgment of the appellate court on any basis appearing in the record. *Beacham v. Walker*, 231 Ill. 2d 51, 61 (2008). In order to recover for negligence, a plaintiff must allege the defendant owed a duty of care, the defendant breached that duty, and the breach was a proximate cause of his or her injuries. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). In a negligence action for injuries arising out of defects on public property, a plaintiff must allege that the city had a duty to maintain its property in a reasonably safe condition for those exercising ordinary care and that it had actual or constructive notice of the existence of the defect within a reasonably adequate time to have taken measures to protect against injuries. 745 ILCS 10/3-102(a) (West 2012); *Wagner*, 166 Ill. 2d at 151.

¶ 42    Illinois courts follow a *de minimis* rule in assessing injury claims resulting from deviations in adjoining sidewalk slabs. *Burns v. City of Chicago*, 2016 IL App (1st) 151925, ¶ 20 (citing *Bledsoe v. Dredge*, 288 Ill. App. 3d 1021, 1023 (1997)). Reasoning that a municipality is not required to keep its sidewalks in perfect condition at all times, courts hold that slight defects are *de minimis* and not actionable as a matter of law. *Id.* A sidewalk defect is considered *de minimis* if a reasonably prudent person would not foresee some danger to persons walking on it. *Id.* ¶ 21 (citing *Arvidson v. City of Elmhurst*, 11 Ill. 2d 601, 605 (1957)).

¶ 43    There is no mathematical formula or bright-line test for determining whether a sidewalk defect is *de minimis*. Thus, the question turns on the facts of each case. *Warner v. City of Chicago*, 72 Ill. 2d 100, 104 (1978). Factors relevant to this analysis include the difference in height between adjoining slabs, the anticipated volume of traffic on the sidewalk, and whether the sidewalk is located in a commercial or residential area. *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 122 (1993). Injuries on sidewalks located in well-traversed or busy commercial areas are more likely to result in liability than those in residential areas. *Warner*, 72 Ill. 2d at 104; *Baker v. City of Granite City*, 75 Ill. App. 3d 157, 160 (1979).

¶ 44    In general, unless it is clear the defect is so minimal that no danger to pedestrians could reasonably be foreseen, a reviewing court should remand the cause for consideration by the

fact finder. See, *e.g.*, *Warner*, 72 Ill. 2d at 104-05 (conflicting testimony as to whether a height difference between sidewalk slabs in a residential neighborhood was 2 inches or only 1⅛ inches presented a question for jury); *Baker*, 75 Ill. App. 3d at 160-61 (whether a crack in a sidewalk between 1¼ inches and 2 inches in depth constituted an unreasonably dangerous condition should be decided by a jury).

¶ 45    For instance, in *Arvidson*, this court considered whether a defective slab of concrete in a commercial district was *de minimis*. *Arvidson*, 11 Ill. 2d at 609. The slab was "slanted downward toward the street, and was about 1 inch below the adjoining slab at one end, and 2 inches below the adjoining slab at the end which was nearer to the street." *Id.* Since the defective sidewalk was located on a street with stores and parking meters, "it could reasonably be foreseen that the area would be traversed by pedestrians enroute to the stores." *Id.* "Under these circumstances," we held, "it [could not] be found that all reasonable minds would agree that the 2-inch variation and the height of the adjoining slabs of the sidewalk near the curb was so slight a defect that no danger to pedestrians could reasonably be foreseen." *Id.* We held, therefore, that the negligence claim was properly submitted to the jury. *Id.*

¶ 46    In this case, the City argues the sidewalk defect was *de minimis* based on what the City characterizes as a slight height difference between the slabs of concrete involved in plaintiff's fall. Plaintiff disputes the City's characterization of the minimal nature of the defect. Two photographs in the record depicting the area where plaintiff fell, dated January 25, 2013, show a person holding a measuring tape next to what appears to be a concrete slab raised at a higher elevation than the adjoining slab. After viewing the photos, we are unable to ascertain a precise measurement of the height discrepancy. The photos do not clearly show whether the height was exactly two inches, as plaintiff argues, or less than two inches, as the City argues. The sidewalk depicted in the photos also contains ice and snow, which further hinders our ability to assess the seriousness of the defect. In addition, while the sidewalk is located in a commercial area, the record contains no evidence of the amount of foot traffic near that location.

¶ 47    Based on the totality of the circumstances, we are unable to find that all reasonable minds would agree the alleged sidewalk defect was so minimal that no danger to pedestrians could reasonably be foreseen. See *id.* In evaluating a motion for summary judgment, we are limited to the record as it existed at the time the motion was presented to the trial court. *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 947 (1993). After reviewing the evidence in the record, we agree with plaintiff that genuine issues of material fact exist with respect to whether the sidewalk defect was *de minimis*. We thus find the City was not entitled to a judgment as a matter of law on this issue.

¶ 48                                        CONCLUSION

¶ 49    For the foregoing reasons, we reverse the judgments of the appellate court and the circuit court granting summary judgment to the City on the basis of statutory immunity and remand the cause to the circuit court for further proceedings. Upon remand, the circuit court is directed to consider the remaining argument presented in the City's motion for summary judgment, that the condition of the sidewalk was open and obvious.

¶ 50    Reversed.

¶ 51    Cause remanded with directions.

¶ 52    JUSTICE THOMAS, specially concurring:

¶ 53    The central issue in this case concerns which of two possible provisions in the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 *et seq.* (West 2012)) governs the outcome—the general discretionary immunity provision of section 2-201 found in article II of the Act (*id.* § 2-201) or the specific provision governing a municipality's duty to repair found in section 3-102 of article III of the Act (*id.* § 3-102). In other words, the question is how to reconcile section 2-201 with section 3-102 of the Act where a plaintiff maintains section 3-102 controls over section 2-201. The majority concludes that nothing in the statutory language limits the scope of the immunity in section 2-201 and that "[p]laintiff's argument is at odds with precedent and simply not supported by the language in the Act." *Supra* ¶ 27. The majority so finds without considering any precedent on point and without examining the language of section 2-201 that specifically limits the scope of the immunity found in that section.

¶ 54    The plain meaning of the statutory language indicates that section 3-102 was intended to control over section 2-201 where a local public entity fails to remedy or protect against a condition on its property that rendered it not reasonably safe for permitted and intended users exercising ordinary care and where the public entity had notice of the unsafe condition. See 745 ILCS 10/3-102 (West 2012). The majority's reasoning to the contrary is not correct. Accordingly, I cannot join the majority opinion. I do agree, however, with the majority's ultimate conclusion that the grant of summary judgment for the City should be reversed and the cause remanded for further proceedings.

¶ 55    The prefatory language to the general discretionary immunity of section 2-201 states that the immunity applies "[e]xcept as otherwise provided by [s]tatute." *Id.* § 2-201. This prefatory language indicates "that section 2-201 immunity is contingent upon whether other provisions, either within the Act or some other statute, create[ ] exceptions to or limitations on that immunity." *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 232 (2007). Put another way, "the phrase '[e]xcept as otherwise provided by Statute' indicates that the legislature contemplated the existence of conflicting statutory mandates that may obviate application of section 2-201." *Arteman v. Clinton Community School District No. 15*, 198 Ill. 2d 475, 491 (2002) (Kilbride, J., dissenting, joined by Harrison, C.J.). In fact, this court has held it to be error for a court to find that the discretionary immunity of section 2-201 abrogates a duty set forth in a statute. See *Snyder v. Curran Township*, 167 Ill. 2d 466, 472 (1995).

¶ 56    In *Courson v. Danville School District No. 118*, 333 Ill. App. 3d 86, 92 (2002), the court specifically found that section 3-102 codifies the duty of a public entity to exercise reasonable care to maintain its property and is therefore a provision "otherwise provided by [s]tatute" within the meaning of section 2-201. *Courson* observed that section 3-102 is not simply a judicially created exception like that involved in *Arteman*, 198 Ill. 2d at 483, a case where the court refused to extend a judicially created rule so as to prevent immunity under section 2-201. *Courson*, 333 Ill. App. 3d at 92. Rather, section 3-102 is a provision that is "otherwise provided by [s]tatute," which therefore negates the immunity of section 2-201. *Id.*

¶ 57    I would hold that section 3-102 is precisely the kind of conflicting statutory mandate that obviates section 2-201. Section 3-102 provides as follows:

"(a) *Except as otherwise provided in this Article*, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition.

(b) A public entity does not have constructive notice of a condition of its property that is not reasonably safe within the meaning of Section 3-102(a) if it establishes either:

(1) The existence of the condition and its character of not being reasonably safe would not have been discovered by an inspection system that was reasonably adequate considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property; or

(2) The public entity maintained and operated such an inspection system with due care and did not discover the condition." (Emphasis added.) 745 ILCS 3-102 (West 2012).

¶ 58    The difference in the prefatory language of sections 3-102 and 2-201 is stark. Section 2-201 specifically provides that any conflicting statute controls the outcome, whereas section 3-102 provides that its provisions can only be obviated by a conflicting provision in article III. Thus, it is clear from the legislature's use of the prefatory language "[e]xcept as otherwise provided in this [a]rticle" that the detailed provisions of section 3-102 were intended to apply unless one of the limitations on liability set forth in that section or an immunity found elsewhere in article III applies. Unfortunately for the defendant City in this case, the general discretionary immunity in section 2-201 of the Act is found in article II. Thus, by the express terms of section 3-102, the immunity in section 2-201 does not apply to negate the more specific and contradictory provisions set forth in section 3-102. This conclusion is in turn completely compatible with section 2-201's language that mandates a yielding of its immunity when "otherwise provided by [s]tatute."

¶ 59    The above-tendered analysis would seem to be the end of the matter but for defendant's argument that section 3-102 merely codifies the common-law duty, does not create a duty, and does not provide immunity; therefore it cannot be a more specific immunity provision that takes precedence over section 2-201. According to defendant, then, section 3-102's duty to maintain property can be subject to section 2-201's discretionary immunity. There are a number of problems with defendant's argument.

¶ 60    While it is true that section 3-102 articulates the duty to which the subsequently delineated immunities apply and the Act itself creates no new duties (see *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 412 (1991)), defendant's argument and the majority's analysis

- 14 -

ignore that section 3-102 expresses a clear legislative intent that the common-law duty delineated *now by statute* be applied "[e]xcept as otherwise provided in this Article." And, moreover, section 3-102 is a provision "otherwise provided by [s]tatute." It cannot be emphasized enough that this language of the statutory scheme clearly shows that it was the legislature's intent to make the duty set forth in section 3-102 subject only to the immunities and exceptions in article III. The majority has not cited a single case that holds otherwise.

¶ 61    The majority attempts to support its analysis by citing *West v. Kirkham*, 147 Ill. 2d 1 (1992). But that case actually supports my position. There, the appellate court relied upon the duty to maintain property set forth in section 3-102 and held that that duty precluded the entry of summary judgment on behalf of the defendant public entity. *West v. Kirkham*, 201 Ill. App. 3d 1051, 1054. This court reversed the appellate court and held that the immunity of section 3-104 fell under the "except as otherwise provided by this [a]rticle" language of section 3-102 and therefore no liability could be imposed. *West*, 147 Ill. 2d at 14. In so holding, this court reached the unremarkable conclusion that the immunity of section 3-104 was not limited and that it "clearly and unequivocally states that the municipality is immune from all liability arising out of the failure to provide a traffic control device." (Emphasis omitted.) *Id.* at 7. *West* additionally described section 3-102 not only as a duty provision but also as an immunity provision that expresses the legislative desire to limit the immunity afforded therein to situations where the municipality was without notice that it had created the unsafe condition. *Id. West*, then, is simply a case where an article III immunity was allowed to negate the duty set forth in section 3-102, precisely as contemplated by the prefatory language of section 3-102. Nothing in *West*, however, precludes the obvious conclusion that the legislature intended to limit the immunities that could negate the duty delineated in section 3-102 to those immunities found in article III of the Act.

¶ 62    Given that section 3-102 codifies a duty that runs counter to the general discretionary immunity in section 2-201 and is therefore "otherwise provided by [s]tatute," the majority's claim that section 3-102 provides no immunity is not a point crucial to the analysis. At any rate, I disagree with the majority's conclusion that section 3-102 provides no immunity.

¶ 63    It is not at all clear that section 3-102 is strictly a codification of the common-law duty. The Tort Immunity Act was enacted, at least in part, as a result of this court's rejection of sovereign immunity in *Molitor v. Kaneland Community Unit School District No. 302*, 18 Ill. 2d 11 (1959), is in derogation of the common law, must be strictly construed, and specifies certain limitations on the liability of public entities, and "[o]ne of those *limitations* appears in section 3-102(a)." (Emphasis added.) *Curtis v. County of Cook*, 98 Ill. 2d 158, 165 (1983). Section 3-102(a) sets forth the common-law duty, to be sure: "a local public entity has a duty to exercise ordinary care to maintain its property in a reasonably safe condition." 745 ILCS 10/3-102(a) (West 2012). But it could also be said that the section then provides immunity—"a local public entity *** *shall not be liable* for injury." (Emphasis added.) *Id.*; *West*, 147 Ill. 2d at 7 (with section 3-102, "the legislature, in clear and deliberate language, expressed its intent to limit th[is] section['s] *immunity* to situations where the municipality was without notice that it had created the unsafe condition" (emphasis omitted and added)); see also *Sylvester v. Chicago Park District*, 179 Ill. 2d 500 (1997) (finding that an argument based on lack of constructive notice was an "immunity argument" under section 3-102); *Pattullo-Banks v. City of Park Ridge*, 2014 IL App (1st) 132856, ¶ 15 (finding that section 3-102(a) provides "immunity" to a local public entity that breaches its duty to exercise ordinary care to maintain its property in a

reasonably safe condition when (1) the entity did not have actual or constructive notice or (2) the injured party failed to use ordinary care or (3) the injured party was not an intended and permitted user of the property). And section 3-102(a) also delineates the circumstances under which its immunity does not apply—*e.g.*, "unless it is proven that it has actual or constructive notice" of the unsafe condition and has adequate time prior to the injury to remedy the condition. Section 3-102(b) contains further tweaks on the notice provision that are not strictly part of the common-law duty. For example, it allows for an inspection system that is subject to a cost-benefit analysis of sorts. 745 ILCS 10/3-102(b) (West 2012). Similarly, subsection (a) removes from liability, in ways not countenanced by the common-law duty, situations involving nonintended and nonpermitted users as well as those involving injury to persons not exercising ordinary care. *Id.* § 3-102(a).

¶ 64    According to the majority, the acid test for characterizing a provision as an immunity involves determining which party has the burden of proof. The majority says that section 3-102 cannot be an immunity provision because it places the burden on plaintiff to prove actual or constructive notice. First of all, section 3-102 does not anywhere refer to "*plaintiff's* burden" of proof, as the majority claims. (Emphasis in original.) See *supra* ¶ 23. Second, the majority misses that the statute actually places the burden of proof on the public entity to establish that it lacked constructive notice under certain circumstances. 745 ILCS 10/3-102(b) (West 2012). By the majority's own definitions, then, section 3-102 must be at least a hybrid immunity provision.

¶ 65    The only case cited by the majority for the view that section 3-102 does no more than codify the common-law duty and provides no immunity is *Wagner v. City of Chicago*, 166 Ill. 2d 144, 152 (1995), which stated the following:

> "[T]he purpose of section 3-102(a) is not to grant defenses and immunities. Instead, it merely codifies, for the benefit of intended and permitted users, the common law duty of a local public body to properly maintain its roads. Immunities and defenses are provided in other sections."

¶ 66    This observation from *Wagner* (1) conflicts with this court's statements in *Curtis* and *West* that section 3-102(a) places certain *limitations on liability* and is an *immunity* provision and (2) does not appear to have been made after a careful comparison of section 3-102(a) with the general duty at common law to maintain property in a reasonably safe condition.

¶ 67    Nevertheless, even if it can be said that section 3-102 merely codifies the common-law duty without providing any limitations on liability or any immunity, section 3-102 would still not fall within the reach of the immunity of section 2-201. See *Courson*, 333 Ill. App. 3d at 92. Unlike the situation involving a judicially created duty, which this court has held *not* to be a rule "otherwise provided by [s]tatute" (see *Arteman*, 198 Ill. 2d at 487), the duty set forth in section 3-102(a) has been codified and thus falls squarely within the "otherwise provided by [s]tatute" language of section 2-201, thus excepting section 3-102(a) from the reach of section 2-201's immunity. *Courson*, 333 Ill. App. 3d at 91-92.

¶ 68    Additionally, even if *Wagner* is correct in its assessment that the immunities and defenses are found "elsewhere," section 3-102(a) provides the location of "elsewhere"—namely, "as otherwise provided in this Article." As noted above, "this Article" refers to article III, not article II where the section 2-201 immunity is located.

¶ 69    This plain reading of the Act makes perfect sense. There are numerous immunities found in article III,[2] and as the title of that article suggests, they all relate to "Immunity From Liability For Injury Occurring In the Use of Public Property."[3] It would only stand to reason that the legislature, having codified the duty of care in section 3-102(a), would also delineate that the immunities available to negate the duty would be limited to those found in the very same article III.

¶ 70    *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, is representative of the cases that have noted the duty provision of section 3-102 only to find that a plaintiff's claim was ultimately barred by one of the immunities located in article III. There, the plaintiff fell and was injured on Chicago Park District property. She alleged that the park district breached its duty of care with respect to the area where the injury occurred. This court found that the park district was immune from suit under section 3-106, an article III immunity that applies to any injury on public property intended or permitted to be used for recreational purposes. *Id.* at 501, 513. As an aside, this court in *Sylvester* referred to the park district's additional argument that it did not have constructive notice of the condition of the property under section 3-102 as an "immunity argument." *Id.* at 511.

¶ 71    The majority cites *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 195 (1997), for the proposition that "[t]his court has recognized that, depending on the facts, decisions involving repairs to public property can be a discretionary matter subject to immunity under section 2-201." *Supra* ¶ 33. But any reliance by the majority on *Chicago Flood* to support the notion that section 2-201 may control over section 3-102 to provide immunity for a public entity's decision to refuse to repair an unsafe condition on its premises would be misplaced. The issues involved in *Chicago Flood* had nothing to do with the question before us here, as that case did not involve an occasion to consider the interplay between section 2-201 and section 3-102. There, the underground tunnel system below the central business district of the city of Chicago flooded, ultimately causing property damage to the nearby aboveground private properties. The duty of ordinary care under section 3-102 for unsafe conditions on public property was not at issue. None of the plaintiffs in that case were even noted to have ever used the tunnel, let alone claimed to have been invited and permitted users of it where they then suffered an injury. This court properly resolved the issues that were before it in *Chicago Flood*, but the case gives no guidance as to the issue involved in the present case.

¶ 72    I would hold that if the plaintiff brings her case within the parameters of section 3-102 and the defendant public entity is unable to establish any immunity or exception found in article III, then potential liability should exist if the wish of the legislature as expressed in the plain meaning of the statute is to be carried out. After all, the chief goal of this court in construing any statutory scheme is to discern and give effect to the intent of the legislature, and the most

_____

[2]The article III immunities include the following: immunity for adoption of a plan or design (745 ILCS 10/3-103 (West 2012)), immunity for failure to initially provide traffic control devices or signs (*id.* § 3-104), immunity for the effect of weather conditions (*id.* § 3-105), immunity for property used for recreational purposes (*id.* § 3-106), immunity for use of access roads or trails (*id.* § 3-107), immunity in connection with the supervision of an activity (*id.* § 3-108), immunity for hazardous recreational activities (*id.* § 3-109), and immunity for injury on a waterway owned by a public entity (*id.* § 3-110).

[3]Article II in contrast is titled "General Provisions Relating to Immunity."

reliable indication of that intent is the plain and ordinary meaning of the words used. *People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 17.

¶ 73 With the possible exception of *Richter v. College of Du Page*, 2013 IL App (2d) 130095, the majority has not cited a single case finding a public entity immune from liability under section 2-201 where a plaintiff raised section 3-102 and could satisfy its requirements. *Richter*, however, is either distinguishable on its facts or a wrongly decided aberration. The defendant in that case actually took measures to protect against the sidewalk defect by putting down orange cones and highlighting the defect with yellow paint until the period of winter freeze and thaw ended and the defect could be reasonably repaired. *Id.* ¶ 15. To the extent that *Richter* can be construed as holding that section 2-201 trumps section 3-102 where section 3-102 is properly raised by the plaintiff and the defendant public entity takes no reasonable action to repair or otherwise remedy the unsafe condition in a reasonable period of time, I would find that *Richter* was wrongly decided and should be overruled.

¶ 74 In conclusion, I would find that the legislature intended application of a limited number of immunities—confined to article III—for a public entity's failure to repair its unsafe property. It did not intend to erase the specific language of section 3-102 with section 2-201's general discretionary immunity. Otherwise a municipal official could simply inspect and list everything that is defective and dangerous and institute a "policy decision" not to repair it, thus obliterating section 3-102. This obviously could not have been the intent of the legislature.

¶ 75 Accordingly, I depart from the majority's contrary conclusions.

¶ 76 JUSTICES KILBRIDE and THEIS join in this special concurrence.

- 18 -