2025 IL App (1st) 240258-U

FIRST DISTRICT,
SIXTH DIVISION
January 17, 2025

No. 1-24-0258

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

|  |  |
|---|---|
| LYNN SENNETT, Individually and as Independent Administrator of the Estate of EDWARD SENNETT, Deceased, | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiffs-Appellees, | No. 2017 CH 01343 |
| v. | |
| THOMAS PLIURA and THOMAS J. PLIURA, M.D., J.D., P.C., | Honorable Pamela McLean Meyerson, |
| Defendants-Appellants. | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court's orders granting summary judgment in favor of plaintiffs on defendants' *quantum meruit* counterclaim and plaintiffs' declaratory judgment action are affirmed.

¶ 2     Defendants Thomas Pliura and Thomas J. Pliura, M.D., J.D., P.C. appeal from the trial court's order granting summary judgment in favor of plaintiffs Lynn Sennett,[1] individually and

_____
[1] We will refer to Edward and Lynn Sennett by their first names or, collectively, "the Sennetts."

as independent administrator of the estate of her late husband Edward Sennett,[2] on defendants' *quantum meruit* counterclaim for legal fees. Defendants also appeal the trial court's grant of summary judgment in favor of plaintiffs on their declaratory judgment action declaring defendants' attorney lien invalid and of no effect. For the following reasons, we affirm the judgments of the trial court.

¶ 3                                                    I. BACKGROUND

¶ 4        On January 28, 2015, Edward was discharged from Loyola University Medical Center (Loyola) following a heart transplant. Per Loyola's discharge instructions, Lynn gave a dosage of insulin to Edward later that evening. However, Edward had already received the same dosage earlier in the day. The extra dosage of insulin caused Edward to suffer hypoglycemia induced encephalopathy, put him in a hypoglycemic coma, and caused a severe brain injury.

¶ 5        On February 6, 2015, Edward and Lynn's son Tom Sennett called defendant Pliura whom Edward coached and mentored in high school. Pliura is both a doctor and a lawyer. Tom sought Pliura's advice concerning his father's "major medical problem." At some point, Pliura met with Lynn at the Rehabilitation Institute of Chicago (RIC) to discuss the matter.

¶ 6        The parties dispute the nature of the relationship between the Sennetts and defendants that developed after this meeting. They dispute whether Pliura was retained to represent Edward and Lynn regarding Edward's medical malpractice claim, whether Pliura offered to help the family *pro bono*, and what Pliura was authorized to do. No engagement agreement or written contingency fee agreement exists between the parties. Nevertheless, defendants claim they acted

---

[2] The original plaintiffs in the declaratory judgment action were Lynn, individually and as guardian of Edward's person, and Private Bank & Trust Company, as guardian of Edward's estate. On May 12, 2022, plaintiffs were substituted as party plaintiffs following Edward's death in January 2022. For the sake of simplicity and to avoid confusion, we will refer to these parties collectively as "plaintiffs."

on behalf of Edward and the Sennett family from March 2015 to September 2015 and, thus, are entitled to compensation for their legal services.

¶ 7     Specifically, defendants allege they communicated via phone and email with Virgina Beach, the director of claims services for Trinity Health (the health system that owns Loyola), regarding potential mediation; made a demand of $146 million to Loyola on behalf of the Sennett family; and met with Beach and one of Edward's treating physicians, Dr. David Ripley, to discuss Edward's medical needs. Defendants also claim Loyola "admitted liability" during a meeting with the Sennett family. Pliura claims to have "counsel[ed] the family members on how to conduct themselves" in the meeting. Defendants never filed a lawsuit on Edward or Lynn's behalf and no mediation occurred. Although Loyola did not offer to settle the case with the Sennetts, defendants claim they negotiated an agreement with Loyola to pay for the costs of Edward's care at RIC after January 30, 2015.

¶ 8     On September 9, 2015, Lynn emailed Pliura stating, "I want to thank you for all you have done as a friend and as our attorney. *** I feel this lawsuit is bigger than either of us thought it would be and I believe a bigger/Chicago based firm would be more advantageous for us now. Therefore, I am discharging you as attorney for Ed, my family, and myself with great appreciation for all you have done for us." Lynn offered to pay for "any expenses for reimbursement" and thanked Pliura for his "sincere help and support." The Sennetts subsequently hired Clifford Law Offices, P.C. (Clifford Law) to represent them in the matter, which resulted in the case settling for $14.5 million.

¶ 9     On November 27, 2015, more than two months after Lynn's discharge email to Pliura, defendants sent a "Notice of Attorney Lien" pursuant to 770 ILCS 5/1 (West 2014) to Trinity Health. On January 13, 2016, they sent it again to Trinity Health and Clifford Law. Defendants

purported to have a lien as to "all claims, causes of action, potential causes of action, agreements, settlements, payments, trial awards or judicial judgments related in any way to the medical care, diagnosis, or treatment of Ed Sennett, including any disputed damages or injuries suffered by Ed Sennett, his wife or family."

¶ 10　　　On January 20, 2016, the Will County circuit court appointed Lynn as temporary guardian of Edward's person and estate. She became plenary guardian of his person and estate on March 10, 2016. On May 9, 2016, Lynn, individually and as plenary guardian of Edward's estate, filed a complaint against Loyola for medical negligence and loss of consortium through Clifford Law. As noted above, the case settled for $14.5 million. On June 21, 2016, plaintiffs sought court approval of the settlement and distribution of settlement funds, and on June 29, 2016, the case was dismissed pursuant to settlement.

¶ 11　　　On December 30, 2016, defendants sued Lynn and Edward for *quantum meruit* in the United States District Court for the Central District of Illinois. The district court dismissed the case for lack of subject matter jurisdiction. On January 27, 2017, plaintiffs filed a two-count complaint against defendants in Cook County, seeking declarations that (1) "all and any liens served by [defendants] in connection with the claims of the Sennetts *** are invalid, of no effect, and held for naught" and (2) defendants are "entitled to no such fee or compensation" under *quantum meruit.* Plaintiffs alleged the attorney lien was invalid because there was "never an agreement or contract for representation, in writing or orally," Pliura volunteered to help them *pro bono* "out of his friendship for the family and 'Coach Sennett,' " and the lien was not perfected, as it was not mailed until after any alleged attorney-client relationship had already terminated. On May 3, 2018, defendants filed a counterclaim for *quantum meruit*, seeking

"reasonable compensation for the value of legal services" provided to plaintiffs prior to being discharged as the attorney for "Edward Sennett and any others."

¶ 12          A. Plaintiffs' Motion for Summary Judgment: *Quantum Meruit* Counterclaim

¶ 13          On December 10, 2020, plaintiffs filed a motion for summary judgment on defendants' counterclaim for *quantum meruit*, asserting that Edward could not have accepted any legal services from defendants because he was "disabled and mentally incompetent as of *** the date of his brain injury." Nor could Lynn have accepted the services on Edward's behalf until she was appointed Edward's temporary guardian on January 20, 2016. Therefore, "at no time, whatsoever, was any person properly authorized to enter a contract" for legal services on Edward's behalf.

¶ 14          In Lynn's affidavit, attached to the motion, she attests that on January 29, 2015, she found Edward unresponsive and took him to the emergency room. "That same day, treating physicians diagnosed Ed's brain injury and the cause of the injury." Since then, Edward "has been incompetent and unable to care for himself," "requires 24-hour nursing care, cannot carry any conversation, cannot convey any understanding of what happened to him, and is incapable of making any decisions of any kind." Edward's condition has remained "constant" since the date of his injury.

¶ 15          Knowing Pliura was a doctor, Lynn "believed he could help [her] understand more about Ed's medical condition." She "understood that Tom Pliura wished to assist in learning what caused Ed's injury" and that "he was wanting to act in an advisory capacity as repayment for all that Coach Sennett had done for [him] while in school." At some point, Pliura told her to "give him a dollar value for the hospital to fund Ed's future care and needs," which is why she made

the $146 million demand. After making "no progress," she became frustrated and told Pliura she was going to hire an experienced, Chicago-based lawyer to help them.

¶ 16    Plaintiffs attached to their motion Dr. David Ripley's "Report of Physician," which was filed in Edward's Will County guardianship case. The report states that Ripley examined Edward on December 26, 2015, and diagnosed him with hypoglycemia and hypoxic encephalopathy. According to the report, Edward is "[t]otally dependent on others for care," "[t]otally incapable of personal and financial decisions," relies on 24-hour care, and is unable to care for himself. The motion also attaches certified copies from the Will County case, appointing Lynn as Edward's temporary guardian on January 20, 2016, and his plenary guardian on March 10, 2016, and appointing Private Bank & Trust Company as successor guardian of Edward's estate on June 28, 2016.

¶ 17    Defendants contested the motion for summary judgment by arguing Edward's capacity to contract is irrelevant because "[t]here is no element requiring the existence of a contractual agreement between plaintiff and defendant" for *quantum meruit*. Nonetheless, Pliura averred, in an affidavit, that after speaking with Edward son Tom on February 6, 2015, he "[i]mmediately *** agreed to provide legal services to Lynn Sennett and other members of the Sennett family on behalf of Edward Sennett." Pliura claimed he offered his services "non-gratuitously, with the full expectation of receiving a contingent legal fee" and provided "extensive and valuable legal services to Lynn Sennett, Tom Sennett and other members of the Sennett family on behalf of Edward Sennett." His affidavit states, because the "agreement" with Lynn, Tom, and "other members of the Sennett family was on a contingent-fee basis," Pliura had "no reason to send Lynn *** a bill for attorney fees." Pliura conveniently omits the fact the parties did not have a written agreement. To the be valid, a contingency fee agreement must be writing.

¶ 18        On August 3, 2021, the trial court granted summary judgment in favor of plaintiffs on defendants' *quantum meruit* counterclaim. The trial court found genuine issues of material fact as to "whether or not [defendants] performed a service to the benefit" of Edward and "whether or not [defendants] performed this service gratuitously." However, the court held there was "no question that Edward Sennett was not in a position to accept legal services from [defendants]. He was disabled and no guardian had been appointed for him." As such, he could not have accepted the benefit of defendants' services, which is a required element of *quantum meruit*.

¶ 19        The court rejected defendants' argument that they "had an agreement with Lynn Sennett, Tom Sennett and other members of the Sennett family," sufficient for *quantum meruit.* The court reasoned, the "Sennett family at that time was not authorized to enter into an agreement with anyone to provide legal services in connection with the injuries to Edward Sennett," and because "Edward was the one that was injured," the medical malpractice action belonged to Edward alone, not his family. As such, only he could have contracted for legal services. Immediately after the court's ruling, Pliura asked, "with regards to the counterclaim that was filed, is that just as to Ed Sennett or is that as to Lynn Sennett, as well?" The trial court responded, "I am granting the counterclaim as to the parties *** to the counterclaim," including Lynn, individually and as guardian for Edward.

¶ 20                B. Plaintiffs' Motion for Summary Judgment: Declaratory Judgment

¶ 21        On June 23, 2023, plaintiffs filed a second motion for summary judgment on their declaratory judgment action. Plaintiffs argued defendants' purported attorney lien dated January 13, 2016, "should be declared a nullity" because there was no agreement for legal representation for Edward or Lynn, or a written contingency fee agreement. And even assuming there was an

agreement, defendants served the lien "after Lynn Sennett ceased contact" with defendants, making it invalid.

¶ 22    Plaintiffs' motion attaches Lynn's affidavit and Ripley's physician report, as well as Ripley's declaration, attesting, "After sustaining his injury in January 2015, and at the time I completed the Physicians Report, Edward Sennett was not competent to understand or consent to a contract" and "lacked the capacity to understand medical, legal and/or business transactions." Ripley's declaration attaches a true and accurate copy of his physician report filed in Edward's Will County guardianship proceeding. The motion also attaches Lynn's deposition testimony, wherein she explains how she had Tom reach out to Pliura because she was "looking for someone who could give [them] some advice on whether [they] actually had a chance to have a lawsuit or not." Pliura told her she "wouldn't owe [him] anything" and that it would be "pro bono" considering all that Coach Sennett had done for him. Lynn avers Pliura was not her or Edward's attorney. She did not consent to Pliura meeting with Beach, and she usually found out about their meetings after the fact. Lynn discharged Pliura via email because she "wanted [him] to know that [they] were done with [him] totally."

¶ 23    On July 10, 2023, defendants moved to strike several plaintiffs' exhibits. In pertinent part, defendants argued that Lynn's affidavit violates the Dead Man's Act (735 ILCS 5/8-201) and contains "a host of unsworn conclusions which [she] is not qualified to opine on" in violation of Supreme Court Rule 191(a). Defendants also challenged Ripley's declaration as conclusory and an undisclosed expert opinion in violation of Supreme Court Rule 213. They also objected to Ripley's report as being "unsworn and not verified."

¶ 24    The trial court denied defendants' motion to strike, finding Lynn's affidavit was sufficient because it was made "under penalty of perjury"; Lynn was only providing lay opinion

as to her observations; and the Dead Man's Act "does not apply" to Lynn's statements. The court also found Ripley's declaration was supported by sufficient facts to support his diagnosis.

¶ 25    In response to plaintiffs' motion, defendants argued there "is no competent evidence *** that any Court anywhere determined Ed Sennett to be disabled or not competent until the Will County Court did so on January 20, 2016." And because Lynn was not appointed Edward's guardian until January 2016, defendants were never actually discharged from representing Edward.

¶ 26    Defendants then attached a second affidavit from Pliura, dated March 14, 2023, stating that he sent a notice of attorney lien via certified mail to Trinity Health on November 27, 2015, and a second notice to both Trinity Health and Clifford Law on January 13, 2016. Pliura also claimed, for the first time, to have represented Lynn Sennett and the "Sennett family" for "Loss of Consortium claims."

¶ 27    On January 10, 2024, the trial court granted summary judgment in favor of plaintiffs, finding defendants' "purported 'Attorney Lien' dated January 13, 2016 *** invalid and of no effect." The court held Edward was "incapable of consenting to an attorney fee agreement because he was incompetent after his injury" and, therefore, could not have agreed to any fee with defendants for legal representation. The court also held defendants "did not perfect [their] lien because even if there had been a valid attorney-client fee agreement, that relationship was terminated before the lien was sent." Defendants now appeal the granting of both motions for summary judgment.

¶ 28                                    II. ANALYSIS

¶ 29                                  A. Legal Standard

¶ 30         On appeal from an order granting summary judgment, a reviewing court must determine whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). Summary judgment is encouraged to aid in the expeditious disposition of a lawsuit, but it is a drastic means of disposing of litigation. *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. Summary judgment should only be granted if, construing the evidence strictly against the movant, "the movant's right to a judgment is clear and free from doubt." *Id.*

¶ 31         A defendant (here, plaintiffs/counter-defendants) who moves for summary judgment can meet its initial burden of production by "affirmatively showing that some element of the case must be resolved in defendant's favor." *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (2000). "A defendant who uses this method is required to prove something it would not be required to prove at trial; at trial, the burden would be on plaintiff to prove the element, not on defendant to disprove it." *Id.* Here, the trial court found plaintiffs' motion for summary judgment on the *quantum meruit* counterclaim to be a *Celotex* motion (*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). A *Celotex* motion does not put forth any affirmative evidence; it asserts that the nonmoving party has no evidence to prove its case. See *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 218. We review the trial court's summary judgment rulings *de novo*. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 385 (1996).

¶ 32                              B. *Quantum Meruit* Counterclaim

¶ 33          In granting summary judgment for plaintiffs on defendants' counterclaim, the trial court

found that defendants could not prove Edward accepted defendants' legal services because he

was disabled as of the date of his brain injury and Lynn had not yet been appointed his guardian.

Defendants argue that this was in error because (1) there is no "competent evidence" that Edward

was incapable of accepting legal services and (2) the trial court failed to address whether Lynn

accepted defendants' legal services on her own behalf.

¶ 34                       1. Undisputed Evidence of Edward's Disability

¶ 35          To recover under a theory of *quantum meruit*, defendants must prove (1) they performed

a service to the benefit of plaintiffs; (2) defendants did not perform the service gratuitously; (3)

plaintiffs accepted this service; and (4) no contract exists to prescribe payment for this service.

*Installco Inc. v. Whiting Corp.*, 336 Ill. App. 3d 776, 781 (2002). *Quantum meruit* requires a

showing that plaintiffs "*voluntarily accepted* a benefit which would be inequitable for [them] to

retain without payment since the law implies a promise to pay reasonable compensation when

valuable services are *knowingly accepted*." (Emphasis added.) *Plastics & Equipment Sales Co.,

Inc. v. DeSoto, Inc.*, 91 Ill. App. 3d 1011, 1017 (1980). Because Edward was disabled at the time

he allegedly agreed to defendants' legal representation, he could not have voluntarily or

knowingly accepted those services. Nor could a family member have accepted legal services on

Edward's behalf without the formal power to do so by virtue of appointment as his guardian.

This is consistent with public policy to render certain contracts unenforceable to protect people

with disabilities from people who would take advantage of them.

¶ 36          Despite defendants' protestations, the record is undeniable that Edward was disabled as

of January 29, 2015, the date of his brain injury. According to Lynn's affidavit, she found

Edward unresponsive on January 29, 2015. She took him to the hospital, where he remained comatose. That same day, Edward's doctors diagnosed him with his brain injury. Since then, Edward has been "unable to care for himself," required 24-hour care, could not convey any conversation, and incapable of making any decision of any kind. Lynn averred that Edward's state had remained "constant" since the date of his injury. Ripley corroborates this, explaining that Edward is "[t]otally dependent on others for care" and "[t]otally incapable of personal and financial decisions." Based in part on Ripley's opinion, the Will County circuit court adjudicated Edward a person with a disability, who lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of his person and is unable to manage his estate or financial affairs. 755 ILCS 5/11a-3 (West 2015).

¶ 37        Defendants present nothing to dispute this assessment. In fact, in emails to Beach sent in April and July 2015, Pliura describes Edward as having co-morbid conditions, significantly impaired speech, needing 24/7 care, being in a highly agitated state the great majority of the time, and only able to understand limited conversation from his family. As a disabled adult, Edward was bereft of the ability to knowingly accept legal services from defendants. Accordingly, we find the trial court correctly concluded the critical element of acceptance for *quantum meruit* could not be met.

¶ 38        We also find the court correctly allowed Ripley's report and Lynn's affidavit to stand. First, as to Ripley's report, defendants never challenged it below in connection with this motion for summary judgment and have waived it on appeal. *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 15 ("Theories not raised during summary judgment proceedings are waived on review").

¶ 39    Second, as to Lynn's affidavit, we find no violation of Supreme Court Rule 191(a). The document demonstrates Lynn's averments are based on her personal knowledge and there is a reasonable inference that she, as Edward's wife, and the person who found him in his comatose state and personally observed him daily after his brain injury, could competently testify at trial. As such, Rule 191 is satisfied. *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 349 (2010) (Rule 191 is satisfied if the affidavit is based upon personal knowledge and there is a reasonable inference the affiant could competently testify to the contents at trial).

¶ 40    We reject defendants' assertion that Lynn's affidavit is conclusory and injects incompetent medical opinions. Rather, it carefully lays out her own observations of Edward and personal knowledge of his condition. What is more, Lynn signed the affidavit "[u]nder penalty of perjury." This satisfies Rule 191(a). *Robidoux v. Oliphant*, 201 Ill. 2d 324, 340, 343 (2002) (affidavit does not have to be notarized; a signature with the affiant's name "appear[ing] as one having taken an oath" will suffice).

¶ 41    As to defendants' claim that Lynn's affidavit violates the Dead Man's Act (735 ILCS 5/8-201 (West 2022)), once again, defendants waived this argument by not raising it below. See *Village of Arlington Heights*, 2011 IL App (1st) 110748, ¶ 15. Nonetheless, this argument is meritless because only a representative of a disabled person's estate may invoke it. Defendants may not. *In re Estate of Sewart*, 274 Ill. App. 3d 298, 308 (1995); see also *Balma v. Henry*, 404 Ill. App. 3d 233, 239 (2010) (defendant could not bar decedent's deposition because "[o]nly the representative of an estate can either assert or waive the privilege of invoking the Dead Man's Act"). This makes sense given the origin of the Dead Man's Act, which protects the estate by precluding an adverse party from testifying on their own behalf as to any conversation with the disabled person to any event which took place in front of them. 735 ILCS 5/8-201. Defendants

may not invoke the Act to disadvantage Edward's estate and suppress Lynn's statements and firsthand observations of Edward to their advantage. *Balma*, 404 Ill. App. 3d 233 at 238.

¶ 42                              2. Alleged Representation of Lynn, Individually

¶ 43        Defendants next argue the trial court erred in concluding that only Edward had a "right to the underlying negligence claim" because the complaint filed by Clifford Law included a loss of consortium claim on behalf of Lynn. Defendants' argument is misplaced. The relevant inquiry is whether plaintiffs accepted defendants' legal services. Whatever complaint was eventually filed on behalf of plaintiffs by Clifford Law is of no moment and sheds no light on what legal services defendants claim to have provided to plaintiffs and whether plaintiffs accepted those services.

¶ 44        As held above, we agree with the trial court that no other family member could have accepted legal representation for a medical malpractice claim on behalf of Edward. A medical malpractice claim would address Edward's injuries resulting from Loyola's negligence. It is distinct from any other injury to Lynn or the Sennett family. See *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 176-77 (2009) (a loss of consortium action is legally distinct from a direct personal injury action). Moreover, defendants never argued below that Lynn had contracted defendants relative to a loss of consortium claim. The first time defendants ever mentioned this phrase was in response to plaintiffs' second motion for summary judgment, filed two years after this first motion was heard.

¶ 45        In Pliura's first affidavit, dated March 5, 2021, he said he entered into an agreement to "provide legal services to Lynn Sennett and other members of the Sennett family on behalf of Edward Sennett." Pliura did not mention representing Lynn for a loss of consortium claim. It was always with respect to a medical malpractice claim on Edward's behalf. For instance, in defendants' response to bill of particulars, they claim Lynn "retained Pliura to represent her

individually and on behalf of Edward Sennett, to review, investigate and *** pursue a claim related to the medical mishap." They go on to say Lynn "orally contracted with Defendants to provide the full range of legal services *** for injuries received by Edward Sennett in connection with his medical care"; specifically, a "potential claim sounding in healing art malpractice arising out of substandard medical care provided to Ed Sennett." They also indicate the "nature, scope, and subject-matter" of the legal representation was only "a claim of medical negligence against Loyola pertaining to the medical care provided to Ed Sennett after undergoing a heart transplant."

¶ 46     There is no mention of a loss of consortium claim for Lynn. In fact, the only time loss of consortium is mentioned is in Pliura's March 14, 2023, affidavit and an undated draft complaint alleging loss of consortium on behalf of Lynn submitted in connection with the second summary judgment motion discussed below. However, our scope of review as to the granting of this first motion for summary judgment is limited to the record presented to the trial court at the time of its ruling. See *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 947 (1993) ("The scope of appellate review of a summary judgment motion is limited to the record as it existed at the time the trial court ruled"); see also *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 52 (declining to consider an affidavit that was submitted only in support of a motion to reconsider because it was "not properly before the circuit court at the time of its ruling on the motions for summary judgment").

¶ 47     Based on the record before us, it is clear Edward did not have the legal capacity to accept defendants' legal services and Lynn did not have the authority to contract for him until she became guardian. Nor is there any evidence raising a question of fact as to whether Lynn knowingly accepted defendants' services for a loss of consortium claim since defendants

completely failed to raise this claim below. As such, the court correctly granted summary judgment in favor of plaintiffs on defendants' *quantum meruit* counterclaim because defendants could not prove the acceptance of defendants' services – a vital element of their claim.

¶ 48                          C. Declaratory Judgment: Attorney Lien

¶ 49        The court also properly granted summary judgment on plaintiffs' declaratory judgment action declaring defendants' attorney lien invalid and of no effect. On appeal, defendants challenge veracity of plaintiffs' exhibits and Edward's competency, but they ignore the fundamental flaw in their attorney lien claim: They failed to perfect their attorney lien under the Attorney Lien Act (Act) by serving it too late. Therefore, they can never prevail.

¶ 50        The Act provides, in pertinent part: "To enforce [an attorney] lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action." 770 ILCS 5/1 (West 2014). "In order to create an effective [attorney] lien there must be an attorney-client relationship and notice of the [attorney] lien must be served during that relationship." *In re Chicago Flood Litigation*, 289 Ill. App. 3d 937, 943 (1997). An attorney lien is a creature of statute, so the Act must be strictly construed. *People v. Phillip Morris, Inc.*, 198 Ill. 2d 87, 95 (2001). "Attorneys who do not strictly comply with the Act have no lien rights." *Id.* ¶ 19.

¶ 51        The unrefuted evidence shows defendants did not comply with the Act and, thus, have no lien rights because (1) there was no attorney-client relationship and (2) even assuming there was one, it ended with Lynn's email dated September 9, 2015, approximately six weeks before defendants served the first lien.

¶ 52    Defendants claim they served their attorney lien on Trinity Health on November 27, 2015, and sent it again to Trinity Health and Clifford Law on January 16, 2016. This was long after any alleged attorney-client relationship ended. Because the undisputed record shows defendants served the lien after the termination of any relationship with the Sennetts, defendants have no lien rights as a matter of law. *Id.*; *Rhoades v. Norfolk Western Ry. Co.,* 78 Ill. 2d 217, 227 (1979) (notice of a lien for fees served by an attorney after being discharged by her client is invalid).

¶ 53    We summarily reject defendants' argument, which they label "The Oxymoron Argument." This argument presupposes that Edward, who was incapacitated and has since died, consented to their legal representation of him, and they have yet to be discharged. Their argument is made from whole cloth and contradicted by undisputed facts in the record showing Edward did not and could not legally consent to the formation of an attorney-client relationship with defendants. In the absence of such relationship, defendants have no lien rights. Accordingly, we affirm summary judgment for plaintiffs on their declaratory judgment action declaring defendants' attorney lien invalid and of no effect.

¶ 54    III. CONCLUSION

¶ 55    We affirm the judgments of the circuit court of Cook County granting summary judgment in favor of plaintiffs on defendants' *quantum meruit* counterclaim and on plaintiffs' declaratory judgment action.

¶ 56    Affirmed.